UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAVE LONG BEACH ISLAND, a nonprofit corporation; and ROBERT STERN, Ph.D., an individual,<br><br>  Plaintiff,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR; DEB HAALAND, Secretary of the Interior, acting in her official capacity; and The United States BUREAU OF OCEAN ENERGY MANAGEMENT,<br><br>  Defendants. | Case No. 22-cv-55 (DLF)<br><br>Judge Dabney L. Friedrich |

**PLAINTIFFS SAVE LONG BEACH ISLAND, ET AL.'S MOTION FOR LEAVE TO FILE AMENDED AND SUPPLEMENTAL COMPLAINT**

Nancie G. Marzulla (D.C. Bar No. 400985)
Roger J. Marzulla (D.C. Bar No. 394907)
Marzulla Law, LLC
1150 Connecticut Ave NW, Suite 1050
Washington, D.C.  20036
Phone:   (202) 822-6760
Email:   nancie@marzulla.com
roger@marzulla.com

David P. Hubbard, *Pro Hac Vice* (CA Bar No. 148660)
Gatzke Dillon & Ballance LLP
2762 Gateway Road
Carlsbad, CA 92009
Phone:   (760) 431-9501
Email:   dhubbard@gdandb.com

Counsel for Plaintiffs

**MOTION FOR LEAVE TO FILE AMENDED AND SUPPLEMENTAL COMPLAINT**

TO THE COURT AND ALL COUNSEL, please be advised that pursuant to Federal Rule of Civil Procedure 15(a) and (d), Plaintiffs Save Long Beach Island, Inc. and Robert Stern, Ph.D. (collectively, "Plaintiffs"), by and through undersigned counsel, hereby move this Court for leave to file the Amended and Supplemental Complaint attached to this Motion. For the reasons set forth in the accompanying Memorandum of Points and Authorities, Plaintiffs request this Court grant it leave to file the Amended and Supplemental Complaint.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the attached Proposed Amended and Supplemental Complaint, the Declaration of David P. Hubbard, the pleadings and papers on file herein, and upon such other evidence or argument as may be presented to the Court at the time of hearing.

Through an email exchange between March 31 and April 5, 2023, Plaintiffs counsel, David Hubbard, discussed this Motion with Sara Costello, counsel for Defendants. (Decl. of David P. Hubbard in Support of Plaintiffs' Motion for Leave to Amend, ¶3.) Ms. Costello informed Mr. Hubbard that Defendants oppose this Motion. *Ibid.*

Dated: April 10, 2023                                                                                 Respectfully submitted,

/s/ Nancie G. Marzulla
Nancie G. Marzulla (D.C. Bar No. 400985)
Roger J. Marzulla (D.C. Bar No. 394907)
Marzulla Law, LLC
1150 Connecticut Ave NW, Ste. 1050, Washington, D.C.  20036
Phone:   (202) 822-6760
Email:   nancie@marzulla.com

/s/ David P. Hubbard
David P. Hubbard, *Pro Hac Vice* (CA Bar No. 148660)
Gatzke Dillon & Ballance LLP
2762 Gateway Road, Carlsbad, CA 92009
Phone:   (760) 431-9501
Email:   dhubbard@gdandb.com

Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAVE LONG BEACH ISLAND, a nonprofit corporation; and ROBERT STERN, Ph.D., an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR; DEB HAALAND, Secretary of the Interior, acting in her official capacity; and The United States BUREAU OF OCEAN ENERGY MANAGEMENT,<br><br>    Defendants. | Case No. 22-cv-55 (DLF)<br><br>Judge Dabney L. Friedrich |

**PLAINTIFFS SAVE LONG BEACH ISLAND, ET AL.'S MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED AND SUPPLEMENTAL COMPLAINT**

Nancie G. Marzulla (D.C. Bar No. 400985)
Roger J. Marzulla (D.C. Bar No. 394907)
Marzulla Law, LLC
1150 Connecticut Ave NW, Suite 1050
Washington, D.C.  20036
Phone:   (202) 822-6760
Email:    nancie@marzulla.com
              roger@marzulla.com

David P. Hubbard, *Pro Hac Vice* (CA Bar No. 148660)
Gatzke Dillon & Ballance LLP
2762 Gateway Road
Carlsbad, CA 92009
Phone:   (760) 431-9501
Email:    dhubbard@gdandb.com

Counsel for Plaintiffs

# TABLE OF CONTENTS

    **Page**

I. INTRODUCTION ............................................................................................................7

II. STATEMENT OF RELEVANT FACTS AND FACTUAL ALLEGATIONS ................................................................................................................11

III. LEGAL STANDARD ....................................................................................................15

IV. ARGUMENT ..................................................................................................................16

    A. SLBI Meets the Standards for Granting Leave to File an Amended and Supplemental Complaint ................................................................16

V. CONCLUSION ...............................................................................................................17

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Butler v. White*
67 F.Supp.3d 59 (D.D.C. 2014) ..................................................................................................16

*City of Tenakee Springs v. Clough*
915 F.2d 1308 (9th Cir. 1990) .....................................................................................................9

*Earth Island Ins. v. U.S. Forest Serv.*
351 F.3d 1291 (9th Cir. 2003) .....................................................................................................9

*Foman v. David*
371 U.S. 178 (1962) ...................................................................................................................15

*Hall v. C.I.A.*
437 F.3d 94 (D.C. Cir. 2006) .....................................................................................................15

*In re Sunrise Sr. Living, Inc. Derivative Litigation*
550 F.Supp.2d 1 (D.D.C. 2008) .................................................................................................17

*Kleppe v. Sierra Club*
427 U.S. 390 ................................................................................................................................9

*Native Ecosystems Council v. Dombeck*
304 F.3d 886 (9th Cir. 2002) .......................................................................................................9

*Wildearth Guardians v. Kempthorne*
592 F.Supp.2d 18 (D.D.C. 2008) ...............................................................................................15

**Federal Statues**

Federal Rules of Civil Procedure

  §15................................................................................................................................15

  §15(a) ...........................................................................................................................15

  §15(a)(2) ......................................................................................................................15

  §15(d) ...........................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

5 U.S.C. § 706(2)(A) and (E) ...............................................................................................14

16 U.S.C. §§ 1531-1544 .......................................................................................................14

42 U.S.C. §§ 4321-4347 .......................................................................................................14

**Other Authorities**

Draft *BOEM and NOAA Fisheries North Atlantic Right Whale and Offshore Wind Strategy* ...................................................................................12

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED AND SUPPLEMENTAL COMPLAINT**

Plaintiffs Save Long Beach Island, Inc. and Robert Stern, Ph.D. (collectively, "Plaintiffs" or "SLBI") submit the following Memorandum of Points and Authorities in Support of its Motion for Leave to file an Amended and Supplemental Complaint.

## I.   INTRODUCTION

On January 10, 2022, SLBI filed a Complaint for Declaratory and Injunctive Relief (ECF No. 1) (the "Complaint") against the United States Department of Interior and the United States Bureau of Ocean Energy Management ("BOEM") (collectively, "Defendants"). The Complaint sought to set aside BOEM's decision to select certain Wind Energy Areas ("WEAs") as part of its renewable energy program on grounds that BOEM failed to comply with the National Environmental Policy Act ("NEPA"), the Endangered Species Act ("ESA"), and the Administrative Procedure Act ("APA"). Defendants moved to dismiss the complaint, contending Plaintiffs' claims were not ripe for adjudication. (ECF No. 14.)

On March 9, 2023, this Court granted Defendants' Motion to Dismiss the Complaint, ruling that the Court lacked subject matter jurisdiction because Plaintiffs' claims were not ripe for review. (ECF Nos. 28, 29.)

The Court's Order instructed Plaintiffs to file any motion for leave to amend the Complaint no later than April 10, 2023. *Id*. Accordingly, Plaintiffs now move this Court for leave to file an amended and supplemental complaint. Granting leave is proper because (i) the Amended and Supplemental Complaint presents issues that are ripe for review; and (ii) supplementation would promote the economic disposition of the controversy, would not cause undue delay, and would not prejudice the rights of any of the other parties. Specifically, since the Complaint was filed, Defendants have continued to take actions that facilitate their extensive and

integrated program to develop an industrial-scale offshore wind (OSW) energy system along the Atlantic coast of the United States. For example, as of this date:

- BOEM has established more than 10 OSW wind energy areas (WEAs) along the Atlantic coast (Amend. Complaint, ¶ 48);

- Within the identified WEAs, BOEM has auctioned more than 23 OSW leases to wind energy developers (Amend. Complaint, ¶ 50);

- BOEM has received from such developers at least 15 Construction and Operations Plans (COPS), each providing details for the particular OSW project they intend to build (Amend. Complaint, ¶ 50);

- BOEM has approved two OSW projects – the Vineyard Wind 1 facility off the coast of Massachusetts and the South Fork facility off the coast of Rhode Island. (Amend. Complaint, ¶ 51);

- BOEM has released Draft EISs for six other OSW projects: (1) Sunrise Wind in the Rhode Island/Massachusetts WEA; (2) Revolution Wind in the Rhode Island/Massachusetts WEA; (3) SouthCoast Wind off the coast of Massachusetts; (4) Ocean Wind off the coast of New Jersey; (5) Empire Wind off the coast of New York; and (6) Commonwealth of Virginia Offshore Wind (CVOW) off the coast of Virginia (Amend. Complaint, ¶ 52); and

- BOEM has issued Notices of Intent to prepare EISs for three additional projects: (1) Atlantic Shores South off the coast of New Jersey; (2) U.S. Wind off the coast of Maryland; and (3) Kitty Hawk North off the coast of North Carolina. (Amend. Complaint, ¶ 53.)

Defendants have taken all of these actions in furtherance of the Atlantic OSW program but have done so without benefit of a programmatic environmental impact statement (EIS) or programmatic biological opinion (BiOp).

The *first* is required because the OSW projects are connected, cumulative, and similar, and will generate impacts whose magnitude can only be assessed in a programmatic document. See, for example, *Kleppe v. Sierra Club*, 427 U.S. 390, 400-01 (1976) (noting that a single EIS may be required "where several proposed actions are pending at the same time"); see also *Earth Island Ins. v. U.S. Forest Serv.*, 351 F.3d 1291, 1304-05 (9th Cir. 2003) (noting that a single EIS is required where there is one plan governing the projects *or* the projects are connected, cumulative, or similar); see also *Native Ecosystems Council v. Dombeck,* 304 F.3d 886, 893-94 (9th Cir. 2002) ("A single NEPA review document is required when there is a single proposal governing the projects, *or* when the projects are 'connected', 'cumulative', or 'similar' actions under the regulations implementing NEPA.") See also *City of Tenakee Springs v. Clough*, 915 F.2d 1308, 1312 (9th Cir. 1990) ("Where there are large scale plans for regional development, NEPA requires both a programmatic and site-specific EIS. This court has held that where several foreseeable similar projects in a geographical region have a cumulative impact, they should be evaluated in a single EIS.")

The *second* is required because the OSW projects will be located within habitat used by the federally-listed and endangered North Atlantic right whale (NARW). In October 2022, BOEM and NOAA issued a draft document titled *BOEM and NOAA Fisheries North Atlantic Right Whale and Offshore Wind Strategy* (the "NARW and OSW Strategy"), which acknowledges that BOEM's Atlantic OSW program, when viewed in its entirety, has the

9

potential to harm NARW and cause population scale impacts to the species. (Amend. Complaint, ¶¶ 4, 67)[1] Key statements from the NARW and OSW Strategy include the following:

- "In March 2021, in response to Executive Order 14008, *Tackling the Climate Crisis at Home and Abroad*, the Departments of Interior, Energy, and Commerce announced a national goal to deploy 30 gigawatts of OSW by 2030, while protecting biodiversity and promoting ocean co-use." (p. 1.) (See Amend. Complaint, ¶ 67.)

- "BOEM and the National Oceanic and Atmospheric Administration's (NOAA's) National Marine Fisheries Service (NOAA Fisheries) recognize [OSW] development (from siting to decommissioning) must be undertaken responsibly including managing and mitigating the impacts to endangered species like the North Atlantic right whale. The NARW population is currently in decline, mainly due to vessel strikes and entanglement in fishing gear, necessitating precaution to ensure that OSW development is carried out in a way that minimizes the potential for adverse effects to the species and the ecosystems on which it depends." (p. 1.) (See Amend. Complaint, ¶ 67.)

- "The agencies are working to understand the effects of OSW development on NARWs and their ecosystem, and to develop strategies to mitigate and monitor impacts to NARWs from OSW development." (p. 1.) (See Amend. Complaint, ¶ 67.)

- "BOEM and NOAA Fisheries initiated development of this shared draft *North Atlantic Right Whale and Offshore Wind Strategy* (hereinafter called "Strategy") to focus and integrate past, present, and future efforts related to NARW and OSW development. In response to Executive Order 14008, both agencies share a common vision *to protect and promote the recovery of North Atlantic right whales while responsibly developing offshore wind energy.* This vision reflects the combined legislative mandates of the two agencies and commitment to the Administration's goal of developing OSW while protecting biodiversity and promoting ocean co-use." (pp. 1-2 [Emphasis in original].) (See Amend. Complaint, ¶ 67.)

- "Due to the declining status of NARWs, the resilience of this population to stressors affecting their distribution, abundance, and reproductive potential is low. The species faces a high risk of extinction, and the population is small enough that the death of even some individuals can have a measurable effect on its population status, trend, and population dynamics. Further, the loss of even one

---

[1] True and correct copies of key excerpts from the draft NARW and OSW Strategy are attached to the Declaration of David P. Hubbard in Support of Motion for Leave to Amend, ¶ 4.

individual a year may reduce the likelihood of recovery and the species' achieving optimum sustainable population." (pp. 6-7.) (See Amend. Complaint, ¶ 67.)

- "NOAA Fisheries' *North Atlantic Right Whale Priority Action Plan for 2021-2025* identifies the need to improve our knowledge of factors that may limit NARW recovery, such as OSW development (NOAA Fisheries 2021)." (p. 7.) (See Amend. Complaint, ¶ 67.)

- "The overlap between OSW development (planned, leased, and permitted) and NARW habitat extends to corridors outside the immediate development sites, where vessel traffic between ports and offshore sites would further overlap with the distribution of NARW." (p. 7.) (See Amend. Complaint, ¶ 67.)

- "Effects to NARWs could result from exposure to a single project and may be compounded by exposure to multiple projects. ***It is important to recognize that NARW migrating along the U.S. Atlantic Coast travel through or nearby every proposed OSW development.***" (p. 11 [Emphasis added].) (See Amend. Complaint, ¶ 67.)

Despite these clear statements from the Whale and Wind Strategy, BOEM has not prepared a programmatic EIS for the Atlantic OCS offshore wind energy program. Nor has BOEM initiated consultation with NMFS over the impacts of the Atlantic OSW program on the NARW.

## II.   STATEMENT OF RELEVANT FACTS AND FACTUAL ALLEGATIONS

Generally, this case involves BOEM's OSW program for the Atlantic coast, with emphasis on that portion of the program slated to take place in the New York Bight and off the coast of New Jersey.

The United States government, led by defendant Bureau of Ocean Energy Management (BOEM), has embarked on a comprehensive and aggressive campaign to develop more than 20 industrial-scale offshore wind (OSW) energy projects along the Atlantic coast, from Maine to North Carolina. (Amend. Complaint, ¶ 1.) President Biden confirmed his commitment to BOEM's OSW program by issuing Executive Order 14008, dated January 27, 2021, and titled "Tackling the Climate Crisis at Home and Abroad." Section 207 of the Executive Order

11

expressly calls for a "doubling" of offshore wind energy production by 2030. (Amend. Complaint, ¶ 2.) In March 2021, the Departments of Interior, Energy, and Commerce responded to Executive Order 14008 by announcing a national goal to deploy 30 gigawatts of OSW by 2030.[2]

As of September 2022, there were 27 renewable energy lease areas in the Atlantic Outer Continental Shelf (OCS). (Amend. Complaint, ¶ 3.)[3] All or most of these OSW lease areas overlap habitat of the federally-listed and highly endangered NARW. (Amend. Complaint, ¶3.)[4]

The Atlantic coast OSW projects that BOEM is processing are part of a network of wind energy facilities that will operate synergistically to generate electricity for consumers along the eastern seaboard. (Amend. Complaint, ¶ 5.) For this same reason, the OSW projects also work synergistically to create cumulative impacts on a host of environmental resources, including federally-protected marine mammals such as the NARW. *Ibid.*

The wind energy areas (WEAs) that BOEM has selected for OSW development are located within and along the very migration corridors that NARW use to travel from calving grounds in South Carolina to the zooplankton-rich foraging areas in New England and Canada. (Amend. Complaint, ¶ 6.) In short, BOEM's industrial-scale OSW program for the Atlantic coast puts human development on a collision course with the endangered NARW.

Despite evidence showing that the OSW projects will significantly affect marine mammals and, in the case of the NARW, push the species further toward extinction, BOEM has

---

[2] www.doi.gov/news/interior-joins-government-wide-effort-advance-offshore-wind

[3] Draft *BOEM and NOAA Fisheries North Atlantic Right Whale and Offshore Wind Strategy*, October 2022 ("NARW and OSW Strategy"), p. 3. True and correct copies of key excerpts from the NARW and OSW Strategy are attached to the Declaration of David P. Hubbard ISO Plaintiffs' Motion for Leave to Amend.

[4] *Id.,* at p. 4.

not prepared a programmatic Environmental Impact Statement (EIS) to analyze and disclose the OWS program's cumulative effects on these animals or any other natural resource. (Amdn. Complaint, ¶ 7.) BOEMs' decision to not prepare a programmatic EIS effectively forecloses any opportunity for the public to comment upon, critique, and offer alternatives to the wind lease locations selected by BOEM or to the number and power rating of the wind turbines to be used. (Amend. Complaint, ¶ 7.)

In addition, BOEM has not initiated consultation with NMFS as required under Section 7 of the Endangered Species Act to determine whether BOEM's OSW program for the Atlantic coast might jeopardize the NARW and/or impede its recovery. (Amend. Complaint, ¶ 8.) Nor has BOEM consulted with NMFS to assess whether the OSW projects in a given WEA or region, when viewed cumulatively, would jeopardize the NARW or any other listed species. As a result, no programmatic Biological Opinion (BiOp) for the OSW program – or any region within it – has been prepared. *Ibid.*

Note also that NMFS has issued, and continues to process, incidental take authorizations (ITAs) under the Marine Mammal Protection Act (MMPA) for various activities connected to the proposed OSW projects along the Atlantic Coast. These activities include seabed characterization surveys that involve the use of high-intensity sound pulses; cable laying along the seafloor; and pile-driving for wind turbine installation. (Amend. Complaint, ¶¶ 9, 57.) As indicated in the ITAs themselves, these activities "harass" marine mammals, including the NARW, resulting in take of the species. Worse, the evidence shows that the harassment permitted by the ITAs is cumulative and has the potential to be inflicted repeatedly on the same cohort of right whales. (*Id.*) Again, all of this permitting activity has taken place without benefit of a programmatic EIS or programmatic BiOp.

The purpose of this action is three-fold: *First*, it is intended to force BOEM to prepare a programmatic EIS that comprehensively assesses the impacts of BOEM's OSW energy program along the Atlantic coast. The programmatic EIS should not only evaluate the cumulative and synergistic impacts of all OSW projects currently being proposed for the eastern seaboard; it must also identify and consider alternative locations for some or all of the OSW projects which have the potential to adversely affect protected species, including the NARW. The alternatives analysis must also options regarding the size and power rating of the wind turbines. *Second,* the action is intended to force BOEM to consult with NMFS under Section 7 of the Endangered Species Act and, through that consultation, determine whether the Atlantic coast OSW projects, when considered cumulatively, could jeopardize federally-listed species, including the NARW. The consultation effort should result in preparation of a programmatic Biological Opinion (BiOp). *Third,* the action is intended to enjoin BOEM from processing or approving any additional OSW projects, or any activities connected to such projects (e.g., seabed characterization surveys), until the required programmatic EIS and programmatic BiOp are issued and adopted. (Amend. Complaint, ¶ 10.)

In failing to prepare a programmatic EIS for the Atlantic Coast OSW projects, Defendants have violated the National Environmental Policy Act (NEPA).[5] In failing to initiate Section 7 consultation with NMFS over the cumulative impacts of the OSW projects on listed species, Defendants also have violated the Endangered Species Act (ESA).[6] For these reasons, Defendants have acted arbitrarily, capriciously, and not in accordance with law, resulting in a violation of the Administrative Procedures Act (APA).[7]

---

[5] 42 U.S.C. §§ 4321-4347.
[6]   16 U.S.C. §§ 1531-1544.
[7]   5 U.S.C. § 706(2)(A) and (E).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 15 governs amended and supplemental pleadings. Rule 15(a)(2) permits a party to amend the Complaint with leave of court. Federal Rule of Civil Procedure 15(d) governs supplemental pleadings, and it states:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d).

District courts have broad discretion when deciding whether to grant a motion for leave to amend or supplement a complaint. *Wildearth Guardians v. Kempthorne*, 592 F.Supp.2d 18, 23 (D.D.C. 2008) ["Motions to amend under Rule 15(a) and motions to supplement under Rule 15(d) are subject to the same standard."]. That being said, the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, leave should be granted "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment, etc." *Foman v. David*, 371 U.S. 178, 182 (1962). Similarly, a motion to file a supplemental pleading should be "'freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action.'" *Hall v. C.I.A.*, 437 F.3d 94, 101 (D.C. Cir. 2006). "This loose standard for allowing amendment is consistent with the spirit of the Federal Rules in that it 'facilitates a proper decision on the

merits' rather than making 'pleading a game of skill in which one misstep by counsel may be decisive to the outcome.'" *Butler v. White*, 67 F.Supp.3d 59, 66 (D.D.C. 2014).

## IV. ARGUMENT

### A. SLBI Meets the Standards for Granting Leave to File an Amended and Supplemental Complaint

Plaintiffs seek to amend and supplement its Complaint to include new factual allegations, some of which pertain to events that have arisen since the original Complaint was filed. Specifically, BOEM has approved two OSW projects; released Draft EISs for six other OSW projects; and issued Notices of Intent to Prepare EISs for another three OSW projects. (Amend. Complaint, ¶¶ 48-53.) In addition, some of the projects have been issued ITAs allowing them to harass marine mammals, including NARWs, while conducting seabed characterization surveys. (Amend. Complaint, ¶¶ 9, 57.) [8] These actions demonstrate that Defendants are engaged in a sophisticated and integrated program for developing an industrial-scale OSW energy system off the Atlantic coast – a program for which no programmatic EIS or programmatic BiOp has been prepared. This is a violation of NEPA, the ESA, and the APA.

Granting leave to file the amended and supplemental complaint would promote the economic and speedy disposition of the entire controversy between the parties. The new factual allegations set forth in the proposed Amended and Supplemental Complaint overlap and expand upon Plaintiffs' original claims regarding Defendants' OSW activities in the New York Bight and along the New Jersey coast.

Leave is also appropriate because this Court is familiar with the law, science, and background regarding the administrative process governing wind lease programs in the New

---

[8] Seabed characterization surveys use high-intensity sound pulses to map the seafloor. The noise created by this activity causes Level B harassment of NARW.

York Bight and BOEM's role therein. Further, granting leave would not cause undue delay or prejudice Defendants.

Finally, granting leave is appropriate in this instance because supplementation of the Complaint would not be futile. This Court granted Defendants' Motion to Dismiss the Complaint because it found Plaintiffs' claims as alleged in the original Complaint were not ripe for review. The Proposed Amended and Supplemental Complaint includes allegations concerning recent factual developments that *are* ripe and the proper subject of judicial review. See *In re Sunrise Sr. Living, Inc. Derivative Litigation*, 550 F.Supp.2d 1, 7-8 (D.D.C. 2008) [Plaintiffs' addition of previously unavailable information made amendment of pleading not futile].

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs request the Court grant the Motion for Leave to file the Proposed Amended and Supplemental Complaint.

Dated: April 10, 2023                                                                                      Respectfully submitted,

/s/ Nancie G. Marzulla
Nancie G. Marzulla (D.C. Bar No. 400985)
Roger J. Marzulla (D.C. Bar No. 394907)
Marzulla Law, LLC
1150 Connecticut Ave NW, Suite 1050
Washington, D.C.  20036
Phone:   (202) 822-6760
Email:   nancie@marzulla.com


/s/ David P. Hubbard
David P. Hubbard, *Pro Hac Vice* (CA Bar No. 148660)
Gatzke Dillon & Ballance LLP
2762 Gateway Road
Carlsbad, CA 92009
Phone:   (760) 431-9501
Email:   dhubbard@gdandb.com


Counsel for Plaintiffs